IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

JASON W. King,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )        Civil Action No. 5:09-0068
                                        )
UNITED STATES OF AMERICA, *et al.*,     )
                                        )
            Defendants.                 )

## PROPOSED FINDINGS AND RECOMMENDATION

On January 26, 2009, Plaintiff, an inmate and formerly incarcerated at FCI Beckley, located

in Beckley, West Virginia,[1] and acting *pro se*, filed his Complaint in this matter claiming entitlement

to relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403

U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971).[2] (Document No. 1.) Plaintiff names the following

as Defendants: (1) United States of America; (2) Federal Bureau of Prisons; (3) Michael B.

Mukasey, United States Attorney General; (4) Monty Christy, Correctional Counselor; (5) Michael

Midgley, Correctional Counselor; (6) Saucue Ma'at, Unit Manager; (7) Eric Brooks, Case Manager;

(8) T.R. Craig, Warden; (9) Hattie Smalls, Assistance Warden; (10) Dr. David Aiakman, Dentist at

FCI Beckley; (11) Dr. S. Hughes, Doctor at FCI Beckley; (12) Sue Engles, Associate Warden of

Programs; and (13) Dr. McDaniels, Institution Psychiatrist. (Id., pp. 1 - 4.)

Plaintiff complains that Defendants violated his constitutional rights by failing to provide

---

[1]      Plaintiff indicates that he was transferred from FCI Beckley in December, 2007.
(Document No. 1, p. 7.)

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held
to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

him with adequate dental treatment. (Id., p. 4.) Specifically, Plaintiff explains that "he was physically assaulted by the dentist at FCI Beckley by him mistakenly performing a dental procedure by filling a tooth which nothing was wrong because he mistook me for another inmate." (Id.) Plaintiff alleges that on May 30, 2007, he was placed on call-out for a physical and dental screening. (Id.) Plaintiff explains that "the dental department had another Inmate King on sick-call appointment [and] when the plaintiff was seated, the dental staff mistaken the plaintiff for the other Inmate King on sick-call." (Id.) Plaintiff claims that medical staff failed to ask any questions concerning Plaintiff's dental problems, "which would have alerted the plaintiff that there was a mistake and that he was the wrong patient." (Id., pp. 4 - 5.) Plaintiff states that he "handed the dental assistant his institutional identification card, a x-ray was taken, the plaintiff was seated in the dental chair, and the dentist approached the plaintiff with a needle." (Id., p. 5.) Plaintiff alleges that he "asked what [the needle] was for, but the dentist stated that it was routine and to open my mouth." (Id.) Plaintiff contends "after he was numbed by Dr. Aiakman, the triage medical assistant called and asked if the other Inmate King had arrived at the dental department. Upon checking my registration number, the dental staff realized they had made a mistake and mistaken me for the other patient, Inmate King." (Id.) Plaintiff alleges that his "tooth had already been filled when the mistake was brought to my attention that I was initially there for a dental screening." (Id.) Thus, Plaintiff states that "Dr. Aiakman filled a tooth that there was nothing wrong with, which was tooth number 30." (Id.)

Following the incorrect filling of tooth number 30, Plaintiff alleges that he "started having severe pain in the tooth which had been mistakenly filled from the drilling, packing, and filling." (Id.) Plaintiff admits that he was "seen on June 19, July 10, and July 23, 2007, as a result of requesting sick-call (dental) complaining of sensitivity from anything hot or cold on tooth number

30." (Id.) Plaintiff states that dental staff took two x-rays and "there was alleged to have been nothing wrong with tooth number 30, but tooth number 31 was stated to present decay and my wisdom tooth number 32 was stated to be horizontally impacted." (Id.) Plaintiff admits that during the June 19, 2007, appointment, Dr. Aiakman "adjusted the occlusion on tooth number 30 " and "prescribed Motrin and an antibiotic to alleviate the discomfort." (Id.) Plaintiff acknowledges that dental staff also "explained to the plaintiff that hot and cold sensitivity was common after a filling is placed." (Id.) Plaintiff states that he was "seen through sick-call on August 8 and 23, 2007, and prescribed Motrin on both occasions, and told that he would be rescheduled to replace the Amalgam restoration with a composite restoration." (Id.) Plaintiff acknowledges that "[o]n September 10, 2007, a radiograph was taken and the only indication for pain was once again tooth number 31, which was stated to have decay." (Id.) Plaintiff states he refused to allow Dr. Aiakman treat him regarding tooth number 31 "because I felt that he did not know what he was doing." (Id., p. 6.) Plaintiff explains that he requested Dr. Aiakman "finish what he had done, which was fill the tooth he had initially filled by mistake (tooth number 30)." (Id.) Plaintiff admits that Dr. Aiakman prescribed Motrin for pain, but complains that it was not strong enough. (Id.) Plaintiff again reported to sick-call on September 25, 2007, complaining of severe tooth pain. (Id.) Plaintiff was evaluated by Dr. Aiakman on September 27, 2007. (Id.) A radiograph was taken the same day revealing decay of tooth number 31, but showing "nothing wrong with tooth number 30." (Id.) Plaintiff alleges that he "never had any trouble [with tooth number 31] until Dr. Aiakman mistakenly filled tooth [number 30]." (Id.) Plaintiff asserts that on October 4, 2007, dental staff "attempted to convince me to let them pull tooth number 30," but he refused. (Id.) Plaintiff claims that because Dr. Aiakman mistakenly filled tooth number 30, he had "to have surgery for a root canal after being transferred

from the Beckley facility." (Id.) Plaintiff complains that Dr. Aiakman refused his request for a root canal on tooth number 30. (Id.) Therefore, Plaintiff requests declaratory, injunctive, and monetary relief. (Id., pp. 9 - 10.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,

4

403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

1.      **Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S.

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of

81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. <u>Goist v. U.S. Bureau of Prisons</u>, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), *aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." <u>Massey v. Helman</u>, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. <u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004); <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

---

this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative

remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13.

The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint, Plaintiff acknowledges that he did not exhaust his administrative remedies. (Document No. 1, p. 7.) Plaintiff appears to contend that exhaustion should be excused because (1) the Warden failed to timely respond to his administrative remedy request and (2) he was transferred

to a different facility. (Id.) First, Plaintiff complains that he received the Warden's response dated November 13, 2007, on December 4, 2007. Section 542.18 provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Plaintiff, however, failed to consider any absence of a response as a denial and proceed to the next level. Thus, Plaintiff's failure to exhaust is not excused based upon the Warden's alleged failure to timely respond.

Next, Plaintiff appears to contend that he is excused from exhaustion because he was transferred from FCI Beckley to another facility. (Document No. 1, p. 7.) An inmate's transfer to another facility, however, does not render the administrative remedy process unavailable. See Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002)(finding "[t]he fact that [plaintiff] happened to be a prisoner in various locations, and under the custody of different officials, does not affect his obligation to exhaust his administrative remedies before filing suit."); Jackson v. Studel, 2010 WL 1689095, * 2 (W.D.N.C. April 26, 2010)("Plaintiff's failure to exhaust his remedies is not . . . excused by his transfer to a different facility."); Custer v. West Virginia Northern Regional Jail, 2009 WL 1390817 (N.D.W.Va. May 15, 2009)("There is simply nothing in the PLRA, or the pertinent case law, which supports the plaintiff's assertion that a transfer to another facility necessarily renders his administrative efforts futile."); Hendricks v. Barnes, 2007 WL 2257565, * 2 (M.D.N.C. Aug. 3, 2007)("[A] plaintiff will not be excused from exhaustion because he is no longer at the facility where the complained of incident occurred.") Thus, Plaintiff filed his Complaint prior to submitting his claims properly through the BOP's administrative remedy process. Because Plaintiff failed to properly exhaust administrative remedies with respect to his claims in this matter, the undersigned concludes, and hereby respectfully recommends, that this matter should be

10

dismissed. Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider the merits of his claim.

**2.      No Eighth Amendment Violation.**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct.

11

2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for

defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

Plaintiff alleges that Defendants acted with deliberate indifference by "mistakenly" filling a tooth and in failing to provide follow-up dental care for sensitivity and pain. The Court will assume that Plaintiff's tooth pain is a serious medical condition satisfying the objective standard. Plaintiff, however, cannot satisfy the subjective component. First, Plaintiff's claim that Defendant Aiakman "mistakenly" filled his tooth does not establish deliberate indifference. Plaintiff does not allege that Defendant Aiakman knew Plaintiff was the wrong "Inmate King" and knowingly performed an unnecessary dental procedure. In fact, Plaintiff acknowledges throughout his Complaint that his tooth was filled by mistake. It is well recognized that a "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v.

13

Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008); also see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Soto v. Arpaio, 2007 WL 2220511, * 6 (D.Ariz. Aug. 2, 2007)("[E]ven assuming, arguendo, Plaintiff's allegations as true that Defendant filled the wrong tooth, at most, [Defendant's] actions were negligence."); Gindraw v. Dendler, 967 F.Supp. 833, 836-38 (E.D.Penn. July 3, 1997)(finding allegation that defendant extracted wrong tooth failed to establish a claim of deliberate indifference).

Next, the Court finds that Defendants did not act with deliberate indifference in providing dental treatment for Plaintiff's complaints of sensitivity and pain from June, 2007, until December, 2007. During the six-month period, Plaintiff was evaluated approximately eight times by dental staff, four x-rays were conducted, and Defendant Aiakman consistently prescribed pain medication. Although Plaintiff alleges he suffered from sensitivity and pain in the "mistakenly" filled tooth (tooth number 30), he acknowledges that the x-ray results revealed that tooth number 30 was normal. The x-ray results, however, revealed that tooth number 31 had decay but Plaintiff refused treatment of this tooth. The undersigned, therefore, finds that Plaintiff was evaluated and provided treatment following each sick-call request. Plaintiff merely appears to disagree with the treatment provided by Defendants. Specifically, Plaintiff contends that stronger pain medication should have been prescribed and a root canal should have been performed on tooth number 30 to treat his symptoms of sensitivity and pain. An inmate's disagreement with his medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be

14

considered merely desirable' to the inmate." <u>Malcomb v. Raja</u>, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") Accordingly, the undersigned finds that Defendants did not act with deliberate indifference in providing Plaintiff with dental treatment.

<u>**PROPOSAL AND RECOMMENDATION**</u>

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 7.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

<u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985);

<u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this

Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: December 2, 2011.

R. Clarke VanDervort
United States Magistrate Judge

16